IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAMONT WALKER,

                Plaintiff,

    v.

CHAD KELLER, DONALD MORGAN,
and JANEL NICKEL,[2]

                Defendants.

OPINION and ORDER

13-cv-342-jdp[1]

---

Plaintiff Lamont Walker, a prisoner at the Wisconsin Secure Program Facility, is proceeding on claims that defendant Chad Keller retaliated against him for filing a 2010 lawsuit against Keller by (1) giving him a false conduct report (for "authorizing" a letter to defendant Security Director Janel Nickel that made sexual demands and threatened to grope and kill her); and (2) providing false testimony against him at his disciplinary hearing, and that his due process rights were violated by (1) Nickel's approval of the conduct report despite being the victim of the alleged misconduct; (2) Keller's fabricated testimony; and (3) defendant Donald Morgan's decision to allow Keller to "deliberate" with the disciplinary committee after the hearing.

Now before the court is defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act, as well as plaintiff's motions to strike the affidavit of Ellen Ray and to supplement his complaint.

---

[1] This case was reassigned to me pursuant to a May 16, 2014 administrative order. Dkt. 39.

[2] The caption is amended to reflect the proper spelling of defendants' names.

1

After considering the briefing provided by the parties, I conclude that plaintiff's due process claims must be dismissed because he has failed to exhaust those claims, but that supplemental briefing is needed on the question whether plaintiff has exhausted his retaliation claims. Plaintiff's motions to strike an affidavit and to supplement his complaint will be denied.

## MOTION TO STRIKE AFFIDAVIT

Plaintiff has filed a motion to strike the affidavit of Ellen Ray filed by defendants, arguing that she made misleading statements to the court about her knowledge of the attached documents relating to a conduct report given to plaintiff. Plaintiff seems to be saying that Ray, who works as an institution complaint examiner, would not be familiar with conduct report documents. This is not a persuasive argument since, as shown below, institution complaint examiners clearly have access to disciplinary records. In any case, plaintiff has submitted his own matching copy of the conduct report documents[3] attached to Ray's affidavit, so plaintiff's motion will be denied as moot.

## MOTION FOR SUMMARY JUDGMENT

From the affidavits, disciplinary records, and inmate grievance materials submitted by the parties, I find that the following facts are undisputed.

---

[3] Nineteen of the 20 pages attached to Ray's affidavit correspond to pages submitted by plaintiff. The non-matching page appears to be a cover letter from plaintiff to the disciplinary committee. This page is immaterial to the legal issues at hand.

2

### A. Undisputed Facts

Plaintiff Lamont Walker is currently incarcerated at the Wisconsin Secure Program Facility. The events at issue in this case concern events that occurred while plaintiff was incarcerated at the Columbia Correctional Institution.

#### 1. Conduct report

On October 8, 2010, plaintiff was taken out of his cell to speak with the prison psychologist (from the complaint and documents submitted regarding the summary judgment motion, I understand the parties to agree that plaintiff was being evaluated for possible transfer to the Wisconsin Secure Program Facility). After the evaluation, defendant Lieutenant Chad Keller approached plaintiff with various papers, including a letter addressed to the prison security director, defendant Janel Nickel. The letter contained threats to sexually assault and kill Nickel. Keller suspected plaintiff of writing the letter, even though on its face, the letter appeared to be written by another prisoner, and plaintiff believes that the handwriting did not match his own. Nickel had plaintiff's cell searched.

On October 12, 2010, plaintiff was given a conduct report for violating prison rules regarding sexual conduct, threats, and disrespecting staff for writing the threatening letter to Nickel. The conduct report stated that defendant Chad Keller analysed handwriting from the letter and other papers to determine that plaintiff authored the letter.

A disciplinary hearing was held on November 1, 2010. Plaintiff testified that "Keller is a defendant in my civil suit and that's why he did this." The disciplinary committee, led by defendant Donald Morgan, found plaintiff guilty on all three charges.

Plaintiff appealed the decision to the warden, arguing that defendant Keller "was not approved on DOC-73 [a form used to call witnesses to a disciplinary hearing] to attend due process hearing," prison officials were not experts in handwriting analysis, the letter itself was not presented on appeal because it had been disposed of as contraband, and defendant Nickel did not answer a question he proposed. The warden upheld the decision.

### 2. Plaintiff's inmate grievance history

On May 13, 2010, plaintiff submitted an inmate grievance (No. CCI-2010-10512) about being denied a transfer after an "altercation . . . with prison authorities," putting him "at serious risk for retaliation from prison authorities and cruel and unusual punishment." The institution complaint examiner (ICE) rejected the grievance on the ground that reclassification decisions made by the Program Review Committee are not appealable through the inmate grievance process. On appeal, the warden concluded that the grievance was properly rejected.

On August 6, 2010, plaintiff submitted a grievance (No. CCI-2010-16284) arguing that he feared for his safety "due to alleged altercations with prison authorities physical quarrelsome." The ICE rejected the complaint for failing to "allege sufficient facts upon which redress may be made." On appeal, the warden concluded that the grievance was properly rejected.

At some point on October 8, 2010 after defendant Keller showed plaintiff the letter to defendant Nickel and plaintiff's cell was searched, plaintiff filled out a grievance form alleging that Keller's and Nickel's actions were retaliation for plaintiff naming them as defendants in a then-ongoing lawsuit, based on the fact that his handwriting did not match the handwriting

4

on the letter to Nickel. It is unclear from the parties' materials when plaintiff initially submitted the grievance, but it appears that it was returned to plaintiff on October 12, with directions to contact Nickel directly.[4] On October 14, Nickel responded to plaintiff in a letter, stating, "It is standard practice to review all inmates who receive significant segregation time for WSPF. This is not retaliatory. If it is determined you are not eligible, you will not be recommended for transfer."

I can infer from the materials that plaintiff then resubmitted his grievance on October 19, 2010. The grievance was assigned No. CCI-2010-21811. The ICE characterized plaintiff's grievance as one "alleging 'retaliation and harassment' for actions or the lack of regarding a possible transfer to [the Wisconsin Secure Program Facility]."[5] The ICE noted that plaintiff had already been directed to contact Nickel about his complaint, and that Nickel had determined that the decision to send him to WSPF was not retaliatory. The ICE concluded that "it would not be proper to initiate a duplicative investigation" and recommended dismissal of the grievance. The reviewing authority accepted this recommendation. On appeal the CCE stated that decisions on transfers are not subject to review under the inmate grievance system and recommended dismissal. The office of the secretary approved this recommendation.

On December 13, 2010, plaintiff filed a grievance (No. CCI-2010-25857) arguing that defendant Nickel did not approve defendant Keller to attend the disciplinary hearing as a witness yet defendant Morgan let him testify, that his advocate at the hearing had a conflict

---

[4] Under Wis. Admin. Code § DOC 310.09(4), the institution complaint examiner may, "[p]rior to accepting the complaint . . . direct the inmate to attempt to resolve the issue."

[5] Although this seems to be a mischaracterization of the grievance, neither party suggests that the ICE's characterization affects the exhaustion analysis.

of interest because she also worked as an ICE, and that the warden did not review the evidence on appeal because if he had, he would have ruled in plaintiff's favor. The ICE reviewed the disciplinary record and noted that under the Wisconsin Administrative Code, the inmate grievance system can be used only to challenge the procedure used in the disciplinary process and such review is limited to the record. The ICE did not consider plaintiff's argument about the sufficiency of the evidence and concluded that there were no procedural errors. The warden approved the ICE's recommendation to dismiss the grievance. On appeal to the corrections complaint examiner (CCE), plaintiff argued that he was not allowed to view the confidential informant statements used against him. The CCE recommended dismissal of the appeal because it was untimely. The office of the secretary approved the recommendation to dismiss the appeal.

B.    Discussion

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies are exhausted." 42 U.S. C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits." *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement's primary purpose is to "alert[ ] the state" to the problem "and invit[e] corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Section 1997e(a) requires "proper exhaustion," *Woodford*, 548 U.S. at 93; *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which means that the prisoner must follow prison rules when filing the initial grievance and all necessary appeals, "in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282,

284-85 (7th Cir. 2005). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024.

The State of Wisconsin makes administrative remedies available to inmates under the Inmate Complaint Review System (ICRS). Under the ICRS, an inmate must file a complaint with the institution complaint examiner (ICE) within 14 calendar days after the occurrence giving rise to the complaint. *See* Wis. Admin. Code § DOC 310.09(6). After the ICE reviews the complaint, he or she recommends action to a reviewing authority. *See id.* at § DOC 310.11(4), (11). The reviewing authority then makes a decision within ten working days of receiving the recommendation. *See id.* at § DOC 310.12. Inmates unsatisfied with a reviewing authority decision may appeal that decision to the corrections complaint examiner (CCE), who makes a recommendation to the office of the secretary, which ultimately accepts, rejects, or returns the recommendation to the CCE. *See id.* at § DOC 310.13-.14.

Additionally, there are certain limits to inmates' use of the ICRS. For example, under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Accordingly, if an issue "is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden, assuming the matter is not resolved at the disciplinary hearing stage." *Lindell v. Frank*, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005). This is consistent with Wis. Admin. Code § DOC 303.76(7)(a), which states that an inmate who is found guilty after a disciplinary hearing on a major violation may appeal the decision or sentence to the warden within 10 days of the hearing or receiving a copy of the decision, whichever is later. After that appeal is

7

complete, an inmate may use the ICRS only to appeal procedural errors. Wis. Admin. Code §§ DOC 303.76(7)(d); 310.08(3).

In their brief-in-chief, defendants argue that plaintiff failed to exhaust his administrative remedies regarding his claims because he did not fully pursue those claims through either channel available to him – the disciplinary proceedings or the ICRS system. Defendants concede that plaintiff raised his retaliation claims regarding Keller's false conduct report and false testimony at the disciplinary hearing itself, but argue that he did not follow through by raising the claims at the disciplinary appeal. Defendants also point to plaintiff's December 13, 2010 grievance (No. CCI-2010-25857) following the disciplinary hearing to show that he did not raise his claims in the ICRS system. Both plaintiff's disciplinary appeal form and his grievance in the '25857 ICRS proceedings support defendants' position because the issues plaintiff raises in those proceedings do not match the claims plaintiff brings against Keller, Nickel, or Morgan in this case.

In his opposition materials, plaintiff discusses the disciplinary appeals, the '25857 grievance, and three other grievances. Plaintiff's opposition brief largely focuses on the disciplinary appeal and '25857 grievance. He argues that he *did* exhaust his claims against Keller in those proceedings because he raised the issues of the letter being disposed as contraband and Keller not being approved to attend the hearing as a witness. However, those issues do not track the claims plaintiff brings in this case; the disposal of the letter has nothing to do with Keller's actions, and the procedural argument that Keller was not approved as a witness on the DOC-73 form did not put prison officials on notice of plaintiff's present claims that Keller gave him a false conduct report and falsely testified against him.

Two of plaintiff's remaining grievances, submitted on May 13, 2010 and August 6, 2010, were filed well before plaintiff received the October 8, 2010 conduct report. They cannot reasonably be considered to have put prison officials on notice of defendants' alleged misconduct in bringing the conduct report or in violating his rights at the disciplinary hearing.

This leaves plaintiff's grievance No. CCI-2010-21811, which he appears to have initially submitted to the institution complaint examiner *before* he received the conduct report, but the issue he raises in that grievance (that Keller and Nickel were retaliating against him by falsely accusing him of writing the letter to Nickel) is closely related to the retaliation claims he brings against Keller for following up by giving plaintiff a false conduct report and then fabricating testimony at the disciplinary hearing. Defendants attempt to dismiss the October 2010 grievance by lumping it in with plaintiff's May 13, 2010 and August 6, 2010 grievances despite the fact that the October grievance squarely alleges that Keller pursued fabricated charges against him.

Usually, a grievance that predates the specific conduct alleged in the subsequent § 1983 action does not serve to exhaust administrative remedies concerning the later conduct. However, "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (prisoner "was not required to begin the grievance process anew when the very risk to his safety that he identified during the

grievance process came to pass"); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("As a practical matter, [plaintiff] could not have been expected to file a new grievance . . . each time he was assaulted"). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 650. One could argue that these cases are applicable to the present case because plaintiff's October 2010 grievance alerted prison officials to Keller's retaliatory desire to frame plaintiff for the threatening letter.

Whether *Turley* and these other cases *should* apply to the facts of this case is normally an issue defendants would be expected to raise in their briefs because it is their burden to show that plaintiff failed to exhaust his administrative remedies.[6] *Id.* However, they failed to do so, neglecting to even address the October 2010 grievance in their brief-in-chief. Because the contours of the multiple-grievance rule discussed in *Turley* are not well developed, the prudent step is to ask the parties for supplemental briefing on whether the October 2010 grievance served to exhaust plaintiff's retaliation claims against defendant Keller. Accordingly, I will set a short schedule for supplemental briefs.

As for plaintiff's due process claims, none of the grievances nor the disciplinary record shows that plaintiff put defendants on notice of the due process violations raised in this civil action. Therefore, I will grant defendants' motion for summary judgment on these claims and dismiss the claims without prejudice. Because plaintiff's due process claim against defendant Nickel will be dismissed, I will deny his motion to supplement the complaint to clarify his allegations regarding this claim, Dkt. 24, as moot.

---

[6] Another potential issue not briefed by the parties is whether the administrative regulations against raising disciplinary issues in a ICRS grievance would apply to plaintiff's October 2010 grievance, even though the ICRS reviewers did not reject the grievance on those grounds.

## ORDER

IT IS ORDERED that

1. Plaintiff Lamont Walker's motion to strike the affidavit of Ellen Ray, Dkt. 36, is DENIED as moot.

2. Defendants' motion for summary judgment based on plaintiff's failure to properly exhaust his administrative remedies, Dkt. 29, is GRANTED IN PART; plaintiff's due process claims against defendants Keller, Nickel and Morgan are DISMISSED without prejudice.

3. Defendants may have until August 15, 2014 to submit a supplemental brief supporting their motion for summary judgment on exhaustion grounds as detailed in the opinion above. Plaintiff may have until August 22, 2014 to file a response. Defendants may have until August 29, 2014 to file a reply.

4. Plaintiff's motion to supplement his complaint, Dkt. 24, is DENIED as moot.

Entered this 5th day of August, 2014.

BY THE COURT:
/s/

JAMES D. PETERSON
District Judge